## Donovan v. United States.

Surveyors of ports performing the duties of collectors of the customs in ports other than those ports enumerated in the fifth section of the act of May 7th, 1822 (3 Stat. at Large, 693), that is to say of ports other than Boston, New York, Philadelphia, Baltimore, Charleston, Savannah, and New Orleans, are entitled to a salary of but $5000 a year, even though the ports in which such surveyors may be performing the duties of collectors had no existence on May 7th, 1822, and, like the port of St. Louis, were not created till 1831. The system of classes, established for salary purposes by the above-mentioned act of 1822, extends to surveyors doing collectors' duty in ports subsequently created.

Error to the Circuit Court for the Eastern District of Missouri.

Donovan was *surveyor* of the port of St. Louis, "performing the duties of *collector*," from January, 1860, to May, 1861. In the settlement of his accounts with the government he retained $6000 per year as his official compensation, claiming that sum as his legal allowance. The Treasury Department was willing to allow him $5000, but no more. And to get the $1000 in dispute the United States sued him on his official bond.

The question was: Are surveyors of ports, "performing the duties of collectors," under the act of 1831, entitled to the compensation of $6000 per year? The issue presented turned upon the right construction of certain statutes.

In the early history of the custom-house laws the collectors, naval officers, and surveyors received their compen-

sation from fees earned by them, which were provided for
by the various statutes on the subject. As the business of
the country increased the aggregate of these fees came to
be so large that Congress saw fit to limit the compensation
of these various officers, as derived from those fees. The
first of these limitations, now in force, was that of the act
of May 7th, 1822. This law was a limitation upon existing
rights. Without it the officers named would, of course, have
received compensation much larger than the sums named.

The statutes bearing on the case were thus:

By an act of May 7th, 1822, it was thus enacted:*

"SECTION 9. Whenever the *emoluments* of any collector of cus-
toms of either of the ports of Boston, New York, Philadelphia,
Baltimore, Charleston, Savannah, or New Orleans, shall exceed
$4000, or the *emoluments* of any naval officer of either of said
ports shall exceed $3000, or the *emoluments* of any surveyor of
either of said ports shall exceed $2500 in any one year, after
deducting the necessary expenses incident to his office in the
same year, the excess shall in every such case be paid into the
treasury for the use of the United States.

"SECTION 10. Whenever the *emoluments* of any *other* collectors
of the customs shall exceed $3000, or the *emoluments* of any
other naval officer shall exceed $2500, or the *emoluments* of any
other surveyor shall exceed $2000 in any one year, after deduct-
ing therefrom the necessary expenses incident to his office in
the same year, the excess shall in every such case be paid into
the treasury for the use of the United States."

"SECTION 11. The preceding provisions shall not extend to
fines, penalties, or forfeitures, or to the distribution thereof."

At the time of this enactment, St. Louis, of which Dono-
van was the surveyor, &c., was not "a port."

By an act of March 2d, 1831, "allowing the duties on
foreign merchandise imported into Pittsburg, Wheeling,
Cincinnati, Louisville, St. Louis, Nashville, and Natchez to
be secured and paid at those places," and making St. Louis
a port, a change is in some respects made in former laws.

---

* 3 Stat. at Large, 693.

This act makes St. Louis and other places ports, which they were not before. By this law, as will be seen by reference to it, when any merchant in St. Louis imports goods he deposits with the surveyor a schedule of such goods, with an estimate of their cost. Upon this the surveyor makes an estimate of the amount of duties accruing, and the importer gives bond, approved by the surveyor, to pay these duties. The surveyor then sends to the collector at New Orleans a copy of this bond and schedule.

The importer then enters the goods at New Orleans, and the collector then certifies to the surveyor at St. Louis the amount of duties, and delivers the goods to the importer to be shipped to St. Louis. Upon reaching their destination, the surveyor having informed himself of the correctness of the entire proceeding, gives a permit for the landing of the goods.

These duties are, to some extent, in the nature of those performed in other ports by a collector.

The act enacts : *

" SECTION 5. That where surveyors are not already appointed in any of the places mentioned, a suitable person shall be appointed for such places; and on all such surveyors, whether appointed or to be appointed, shall devolve the duties *prescribed by this act, in addition to the customary duties performed by that officer in other places;* and the surveyor at each of said places shall . . . receive, *in addition to his customary fees,* an annual salary of $350."

This act first anywhere made surveyors perform the duties in any respect like those of collectors.

Next came an act of March 3d, 1841, thus: †

" SECTION 5. In addition to the account now required to be rendered by every collector of customs, naval officer, and surveyor of ports, every such collector, naval officer, and surveyor shall, each and every year hereafter, render a quarter-yearly account under oath to the Secretary of the Treasury of all sums of money by each of them respectively received or collected for

---

* 4 Stat. at Large, 480.     † 5 Id. 421

fines, penalties, or forfeitures; . . . or for rent and storage of goods, wares, or merchandise, which may be stored in the public storehouses, and for which rent is paid beyond the rents paid by the collector or other such officer; and if from such accounting it shall appear that the money received in any one year by any collector, naval officer, or surveyor, on account and for rents and storage aforesaid, and for fees and emoluments, shall in the aggregate exceed the sum of $2000, such excess shall be paid by the said collector, naval officer, or surveyor, as the case may be, into the treasury of the United States; and no such collector shall, on any pretence whatever, hereafter receive, hold, or retain for himself, in the aggregate, more than $6000 per year, including all commissions for duties and all fees for storage, or fees or emoluments, or any other commissions or salaries which are now allowed and limited by law. Nor shall such naval officer on any pretence whatever, in the aggregate, receive, hold, or retain for himself, hereafter, more than $5000 per year, including all commissions on duties, and all fees for storage, or fees or emoluments, or any other commissions or salaries which are now allowed and limited by law. Nor shall such surveyor, in the aggregate, receive, hold, or retain for himself, hereafter, more than $4500 per year, including all commissions, or fees, or emoluments, or any other commissions or salaries which are now allowed and limited by law."

Then followed an act of March 3d, 1857, thus:*

"Section 8. The provisions of the act approved the 3d day of March, 1841, which established and limited the compensation of collectors of customs, shall be construed to apply to *surveyors performing or having performed the duties of collectors* of the customs, who shall be entitled to the same compensation as is allowed to collectors for like services in the settlement of their accounts."

It was admitted as part of the case that after the passage of it all surveyors doing duty as collectors at the port of St. Louis have claimed $6000 as the maximum of their compensation, from all sources under the law.

Finally came an act of June 8th, 1872, in terms nearly identical with the one just quoted:†

* 11 Stat. at Large, 221.        † 17 Id. 336.

" The provisions of the fifth section of the act approved March 3d, 1841, which established and limited the compensation of collectors of customs, *shall be amended* and shall be construed to apply to *all* surveyors of customs ports performing or *having performed* the duties of collectors of customs, who shall be entitled to receive the same compensation as is allowed to collectors by said act of March 3d, 1841, for like services in the settlement of their accounts with the treasury : Provided that the fees, commissions, and emoluments prescribed by law, and collected by them, shall amount to such maximum allowance."

Over all came the Revised Statutes of the United States, whose purpose was not to make any new law, but to embody existing statutes. These enact:

" SECTION 2688. No collector or *surveyor performing the duties of collector* shall, on any pretence whatsoever, receive, hold, or retain for himself, in the aggregate, more than $6000 per annum."

. The question on the whole case—fact and statutes—thus was, whether surveyors *now*, A.D. 1860–61, doing collectors' duty, were to be paid with reference to the *classes* into which, *for the purposes of salary*, collectors, surveyors, and naval officers seemed to be divided *by the early act of* 1822; to wit:

1st. The class doing duty at Boston, New York, Philadelphia, Baltimore, Charleston, Savannah, and New Orleans, who received the higher salaries.

2d. All others who received a lower one.

The government asserted that the system of classes, *established by this act*, extended to surveyors doing collectors' duty, though such a class of surveyors did not then exist, but was first constituted by the act of 1831.

Donovan, the surveyor at St. Louis doing collectors' duty, denied this, asserting that all surveyors doing collectors' duty were entitled to the pay of the highest class of collectors; in other words, though he admitted that if he had been collector at St. Louis he could have had but $5000, he asserted that as surveyor, doing in addition a collector's duty, he was entitled, under the acts of 1857 and 1872, to $6000.

The ground of his position was that the act of 1822 applied to the two classes of ports existing at *that date;* that is to say, to ports which had both collectors *and* surveyors, each performing their respective duties, though in some ports enumerated, the duties of both were greater than in other ports not enumerated; that by the law of 1831, a third class of ports was created; that is to say, ports where the surveyor performed all the duties which in the two former classes the surveyor performed, and performed, in addition, the duties which in those ports were performed by the collector; ports, in other words, where double duty or more than double duty was performed by the surveyor; that this double duty entitled the party to an augmented compensation, and that this compensation was *meant* to be given by the act of 1857, and had always been claimed under it by surveyors doing collectors' duty; that the treasury making some difficulty, the act of 1872 had been passed making the right more clear, and that finally the Revised Statutes had put a legislative interpretation on the matter which removed all doubt, if doubt existed.

The Circuit Court (Dillon, J.) thus said:

"The provision of the act of June 8th, 1872—under which compensation is claimed by Donovan, upon the basis of $6000 per year instead of $5000—is that the compensation of such an officer shall be the same as that given to collectors by the fifth section of the act of March 3d, 1841, not to exceed, however, the maximum amount therein allowed. In 1859, in the case of *United States* v. *Walker*,\* the Supreme Court of the United States construed the above-mentioned act of 1841, in connection with the previous acts *in pari materia*, and decided that as respects compensation there were two classes of collectors, viz., 1st. Collectors of the seven ports enumerated in the ninth section of the act of May 7th, 1822, whose total compensation from all sources might equal, but could not exceed, $6000 in a year; and 2d, all other collectors, *i. e.*, collectors of the non-enumerated ports, whose aggregate compensation could not exceed the sum of $5000 in any one year. I am unable to discover

_____

\* 22 Howard, 299.

in the act of 1872 satisfactory evidence that it was thereby intended to abrogate, in favor of surveyors performing the duties of collectors, this established distinction between what is termed the enumerated and unenumerated ports.

"The act of 1841, as authoritatively construed, limited the aggregate compensation of a collector of one of the enumerated ports at $6000, and of a collector of any other port at $5000; but, while it did provide for the compensation of surveyor, it did not provide a specific compensation for a surveyor who, under the act of 1831, performed the duties of a collector of customs.

"This was sought to be remedied by the act of March 3d, 1857, but as its phraseology was not clear, and as complaints were made that it was illiberally restricted by the accounting officers of the Treasury Department to the surveyors of the principal ports, under the ninth section of the act of 1822,* the act of 1872, upon which the plaintiffs in error rely, was passed.

"This last-named act places 'all surveyors of customs ports performing the duties of collectors' upon the footing, as respects compensation, of collectors under the act of March 3d, 1841, for like services.

"St. Louis being a non-enumerated port, the maximum allowance to a collector can, in no event, exceed $5000, and this sum is, in my judgment, the limit of compensation to which the surveyor of the port of St. Louis is entitled."

Judgment was accordingly given for the United States, and the other side brought the case here.

*Messrs. E. F. Noyes and D. I. Wright, for the plaintiff in error:*

The act of May 7th, 1822, has given rise to the phrases, "enumerated" ports and "non-enumerated" ports. The places named in the ninth section are called "enumerated" ports, while all others are called "non-enumerated" ports. It is this distinction, erroneously applied, as we conceive it to have been, that has occasioned all the difficulty in this case.

---

* Congressional Globe, 2d session, 43d Congress, part 4, p. 3409.

No distinction of this kind is in terms created in tho statute itself; that is to say, the phrase "enumerated," or "non-enumerated," is not made use of as applicable to ports themselves, as though it was the intention of Congress to create such a classification, as that it should run through all time forever thereafter. The word "ports" is used in the ninth section. It is not used in the tenth section. The tenth section simply speaks of various classes of officers by name: collectors, naval officers, and surveyors.

The limitation in the tenth section, as applied to collectors, for instance, applies to such collectors as were performing the duties known to the law at that time, and to such other collectors and surveyors as subsequently performed those same duties. It certainly could not be meant to apply to a new class of officers, then unknown, who were afterward created by law to do other things than collectors and surveyors then did, although they might be called by the name, collectors and surveyors.

This law was meant to cover all ports in existence at the date of its passage, May 7th, 1822. But why should it be construed to apply to ports not then in existence, but which were afterward created, with new duties, and new and distinct compensation?

In *Hall* v. *State*,* Ranney, J., referring to a case in this court,† says:

"A well-settled rule of construction here comes to our aid, which is, that 'a statute referring to, or affecting persons, places, or things, is limited in its operation to persons, places, or things as they existed at the time the statute was passed.'"

The enacting power knew what ports existed at the date of the passage of the act of 1822. It knew what the duties performed by the then officers were; but the Congress of 1822 could not be supposed to know what might take place in the distant future. The affairs of the country might so change as that new ports would be required. The duties of

---

* 20 Ohio, 16.        † United States *v.* Paul, 6 Peters, 141.

these new ports might be more onerous than those of any mentioned in the ninth section. Would it, then, be fair to limit the collectors of such new ports to a compensation inferior to that of those who do less work?

The next act is that of March 2d, 1831, which makes St. Louis for the first time a port, and imposes upon its surveyor what in fact were the duties, resembling in some respects those of a collector.

Thus, by this act, duties were imposed upon the surveyor of the port of St. Louis which had never been imposed before. Up to this time St. Louis was not a port at all. The surveyor of that place, if there was one appointed, discharged his duties, whatever they were, for which he received certain fees for each thing performed.

It is evident that it would not be just for Congress to impose upon a man new duties without paying him therefor.

Therefore it is that, in the fifth section of the act of 1831, Congress provides that for these additional services the surveyor so performing the duties of collector shall have a salary of $350, in addition to his customary fees.

If before 1831 the surveyor at St. Louis received $2000, after 1831 he would be entitled to $2350, which shows that the limitation of $2000, in the act of 1822, as to surveyors, does not apply to the surveyors of the act of 1831, who performed the duties of collectors as well.

The next law is that of March 3d, 1841. Prior to this law collectors had rented warehouses in which they stored goods as they were imported. They charged the importers storage. Soon the storage charged far exceeded the rent paid for warehouses, and the collectors received and kept large sums of money in the transaction. To prevent this abuse, the law of 1841 undertook to say that collectors should get no more than $2000 profit out of the warehouse business.

This act is also an act of limitation. It limits the amount which collectors may have from rent and storage to $2000. It further limits the maximum compensation of those col-

lectors to $6000, as this court has said in *United States* v. *Walker*.*

The act of March 3d, 1857, enacts that the provisions of the fifth section of the act of 1841 " shall apply to surveyors performing, or having performed, the duties of collectors of the customs, who shall be entitled to the same compensation as is allowed to collectors for like services, in the settlement of their accounts."

It was supposed by the surveyor at St. Louis, that under this act, he " having performed the duties of collector," was entitled to $6000 per year, the new maximum allowed collectors under the act of 1841.

But as the law of 1857 was not thus construed by the Treasury Department, the law of 1872 was passed. Now, what was the mischief that this law was intended to remedy ? The case shows " that since the act of March 3d, 1857, surveyors performing the duties of collectors have claimed the sum of $6000 as the maximum of their compensation from all sources, under the law." This claim has always been refused by the department, and this suit is to establish it. It was this refusal of the department to allow the $6000, under the law of 1857, that was sought to be remedied by the act of 1872.

This act purports to amend the act of 1841, and to apply it to " surveyors performing the duties of collectors." Suppose we make the necessary amendment in point of fact. The act of 1841 then reads thus:

"And no such collector, or surveyor performing the duties of collector, shall, on any pretence whatever, hereafter receive, hold, or retain for himself, in the aggregate, more than $6000 per year."

Does that not mean that he may retain $6000? Remembering that the fees, &c., of the surveyor, to which he was previously entitled by law, were much more than $6000, is he not now entitled to that sum ?

It will be observed that in fixing the compensation of sur-

* 22 Howard, 299.

veyors performing the duties of collectors, no reference is had in the law to the compensation of other surveyors; but by the law of 1872 they are to have the compensation of *collectors*, as fixed or limited by the fifth section of the law of 1841. The only compensation there fixed for collectors is $6000, and so, as we have already said, the Supreme Court has decided in *United States* v. *Walker*. The maximum compensation of any other surveyor is $4500, and it is conceded by the department, and decided below in the case at bar, that surveyors performing the duties of collectors are to have at least $5000, which is $500 more than the surveyor of an enumerated port receives. This much being conceded, we think the conclusion inevitably follows that the compensation is $6000, and not $5000.

But again. Clearly the law of 1872 was enacted for some purpose or other. Unless the law of 1872 does give the surveyors "performing the duties of collectors" $6000 per year, it means absolutely nothing. The claim persistently made by them, subsequent to the act of 1857, was for $6000. This claim has been as persistently rejected. Certainly the law of 1872 intended to give them some advantage of some kind or other, which they did not have before. This advantage was to be in the matter of compensation, for the act of 1872 relates to nothing other than compensation.

What does the act of 1872 say? The law of 1841 " shall be amended." Why " amended?" Because it does not accomplish its object now. The result it arrives at, under the application of the law of 1857, is not satisfactory. That result is $5000. This not being satisfactory, the law must be changed and " amended." If $5000 was satisfactory to Congress, no change of existing laws, under the construction given, was needed.

This view is sustained by section 2688 of the Revised Statutes of the United States,[*] which are but declaratory of statutes existing when they were passed, *i. e.*, A.D. 1874; for, as lately said by this court,[†] " it was the declared pur-

---

[*] Page 307.    [†] Smyth *v.* Fiske, *supra*, 382.

pose of Congress to collate all the statutes as they were at that date, and not to make any change in their provisions."

The idea that upon the question of compensation there are but two classes of officers—those belonging to enumerated and those to non-enumerated ports—is a wrong one. Abundant legislation by Congress shows this. Repeated laws have given to different officers, collectors and surveyors, salaries, in addition to that which they would have received if this classification alone existed.*

There is nothing in *United States* v. *Walker* rightly understood that militates against our position, though, upon this authority, the case below was decided against us.

Walker was collector of the port of Mobile, which was a port long prior to 1822. He claimed $6000, under the law of 1841, and his claim was disallowed, as it should have been, because, by the law of 1822, his compensation was limited to $3000, allowed a collector of a non-enumerated port, and by the act of 1841 he had $2000 from rent and storage. Walker made no claim under the act of 1831, as we do. No questions arising on that act could arise, nor were any considered by the court. The act of 1831 is not mentioned nor alluded to in the case from beginning to end. How could any rights under that act be determined? Courts decide upon what is before them, not upon what is not.

In our judgment, we are sustained by the Walker case in the views we entertain.

*Mr. G. H. Williams, Attorney-General, and Mr. S. F. Phillips, Solicitor-General, contra:*

The case turns mainly upon the meaning of the fifth section of the act of 1841.

---

* Compensation by special act is given as follows: May 26th, 1824, to collector of Nantucket, $250 per annum; June 30th, 1830, Natchez, Mississippi, collector, $500 per annum; June 30th, 1834, Newark, New Jersey, collector, $250 per annum and fees; July 7th, 1838 (§§ 9 and 10), Vicksburg collector, $500 per annum; December 31st, 1845, Galveston collector, fees, &c., not to exceed $2000; 1848, Astoria collector, $1000 and fees; June 2d, 1862 (§ 2), San Francisco collector, $6000; besides others.

This act refers to and confirms the allowances to collectors, naval officers, and surveyors in the act of 1822, sections nine and ten, and therefore, by the maxim *verba relata inesse videntur*, is to be read as if containing those sections; its main purpose being to amend the eleventh section of such former act, which allowed to collectors, &c., the whole of what they might receive as fees upon fines, forfeitures, &c.

It therefore, by confirmation and by original enactment together, provides for *two* classes of collectors, &c., the one being entitled to salaries of $4000, out of fees upon duties, &c., in addition to $2000 out of fees upon fines, &c.; the other being entitled to salaries of $3000, out of duties, &c., in addition to $2000 out of fines. After effecting this, it proceeds to enact, by way of excluding any other official receipt, that under no pretence shall collectors, &c., receive more than $6000, &c.

It seems plain that this last clause is only a summary, as it were, of the effect of the former words of the section as to the *first* class of collectors, &c., and cannot be construed as meaning that *all* collectors, &c., should have salaries of $6000, &c. It leaves the *second* class to the operation of the greater restrictions of preceding provisions. The act of 1841 is a *restraining*, not an *enlarging* statute, and is to be construed accordingly.

If the statute of 1841 recognizes, and in effect provides for two classes of collectors, then the acts of 1857 and of 1872, which refer surveyors doing collectors' duty to the compensation provided in that statute for "collectors," recognizes and provides for similar (*i. e.*, two) classes of such surveyors, and, *reddendo singula singulis*, refers such of these as may act at *New York*, &c., to the $6000 aggregate, those at other ports to that of $5000.

We are not concerned to explain why the act of 1872 was passed when that of 1857 was already upon the statute-book. If the construction placed by the plaintiff upon the act of 1841 be correct, then the act of 1857 secures the claim made by him in the present action as completely as does that of 1872. If our construction of the act of 1841 be correct, the

act of 1872 does not countervail its effect more than that of 1857. Both acts refer themselves for explanation to the act of 1841.

As for the argument derived from the Revised Statutes, it has no force whatever. It is no part of the business of the legislative department to make declarations for past cases about statutes which it has made, in other words, to expound for such cases the statutes of the country. That is a matter for this court alone, and the court would exhibit a sense of weakness to invoke the aid of such argument. It might as well inquire of each legislator individually what he had meant in voting for the act.

Our construction of the acts *in pari materia* as to this subject, is recommended as leading to a result corresponding to that policy of Congress which has drawn a line between certain collectors, &c., and others. If there be such a policy, why should not a construction maintaining it as to surveyors doing collectors' duty be referred to one which disregards it?

Again, if it were the purpose of Congress to give to officers like Donovan $6000 per annum out of such fees as they might receive, it would have been more natural and simple to express that design in other and fewer words than were adopted in the act of 1872.

Obscure expressions in acts intended by their promoters to give a larger compensation for services, which at such time are ended, than previous provisions had allowed, will not receive a construction to forward that design. For as regards such services the promoters are upon one side of the counter and the interests of the public are upon the other. The inclination is always *contra proferentem, i. e.,* as applied here, against special legislation.

The construction placed by the plaintiff upon the act of 1872 abolishes all distinction between collectors, as well as between surveyors doing collectors' duty. Both classes of officers or neither are, by the act of 1872, to have $6000 in all cases. More than this, both officers, or neither, are to receive $6000 in case any department of their fee-producing

services amounts to so much; whereas the act of 1841 seems plainly to recognize that, in order to make up such $6000, one branch of such services must produce at least $4000, another at least $2000.

The act of 1822 applies to ports afterwards established as well as to those then existing. This is a rule of statutory construction almost universal. Statutes affecting "men" operate as well upon those born after as upon those then living; as those affecting "crimes" apply to crimes afterwards created; as a statute referring non-enumerated articles, for the duty payable upon them, to a *duty* laid upon like "enumerated" articles, applies as well to enumerations in later statutes; as a statute inflicting penalties in respect of articles "prohibited," applies as well to articles prohibited by later statutes; so here, when the act of 1822 speaks of "other collectors," &c., it means all other, whether then existing or afterwards to be created.*

Mr. Justice CLIFFORD delivered the opinion of the court.

Officers of the customs derive their compensation chiefly from certain enumerated fees, commissions, and allowances, to which is added, for the benefit of the collector of the port, a prescribed sum, called salary, which is very much less than the compensation to which the officer is entitled. Provision for such fees, commissions, and allowances, were first made by the act of the thirty-first of July, 1789, which also allowed to collectors certain proportions of fines, penalties, and forfeitures.†

Changes have been made in the rates of fees, commissions, and allowances for such purposes at different periods to graduate the compensation of such officers to the nature and extent of the services imposed, but the theory and outline of the system have been preserved since the first acts were passed levying import and tonnage duties. Examples of such changes are found in the act of the eighteenth of Feb-

---

* Attorney-General v. Saggers, 1 Price, 189; Stuart v. Maxwell, 16 Howard, 150; United States v. Holliday, 3 Wallace, 407.

† 1 Stat. at Large, 64.

ruary, 1793, for enrolling and licensing ships and vessels, and in the act of second of March, 1799, to regulate the collection of duties on imports and tonnage, and in the act usually called the Compensation Act, passed on the same day.*

Regulations of a permanent character were made by those several acts that certain fees and commissions should be paid to the collectors of the customs, together with a certain proportion of the sums paid to them for fines, penalties, and forfeitures collected from persons found guilty of violating the penal prohibitions of the revenue laws. Such fees, commissions, and allowances it was provided should be paid to the respective collectors, and the requirement was that they should keep an accurate account of the same and of all expenses for rent, fuel, stationery, and clerk-hire, and that they should annually transmit such accounts to the Comptroller of the Treasury, but they were allowed by those laws to retain the whole amount of the emoluments derived from those sources beyond the expenses of the office, without any limitation whatever. Expenses for rent, fuel, stationery, and clerk-hire were to be deducted from the gross receipts, but they were allowed to retain the whole of the net balance as official emoluments for their services.

Business revived and importations increased, and with such increase the compensation of the collectors at certain ports became excessive, which called for new legislation; and by the act of thirtieth of April, 1802, Congress prescribed a maximum rate of compensation without making any reduction of the fees or commissions required to be paid to the collectors, but the provisions of the act did not extend to fines, penalties, and forfeitures.†

By that act it was provided that whenever the annual emoluments of any collector, after deducting the expenses incident to the office, amount to more than five thousand dollars, the surplus shall be accounted for and paid into the treasury.

---

* 1 Stat. at Large, 171, 316, 695, 706.        † 2 Id. 172.

Twenty years' experience under that act showed that it needed revision, as it applied without any discrimination whatever as well to the large ports where the principal importations were made as to those of comparatively little importance. Collection districts were accordingly divided by the act of the seventh May, 1822, into two classes, usually denominated the enumerated and the non-enumerated ports.*

Under the provisions of that act the emoluments of collectors of the enumerated ports might reach the sum of four thousand dollars, but the ninth section of the act provided that whenever the emoluments of the office shall exceed that sum, in any one year, the collector, after deducting the necessary expenses incident to his office, shall pay the excess into the treasury for the use of the United States. But the maximum rate of compensation allowed to collectors of the non-enumerated ports under the provisions of that act, from all the sources of emolument therein recognized and prescribed, is three thousand dollars, and the tenth section of the act contains a provision similar to that found in the ninth section, requiring the collector of the non-enumerated ports to account for, and pay the excess, beyond the amount allowed as the maximum rate of compensation, into the public treasury.†

Collectors under those provisions may receive the maximum rate of their offices if the office, after deducting the necessary expenses incident to the same, produces that amount from all the sources of emolument recognized and prescribed by the laws in operation. No one can receive more than the maximum rate and his lawful claim may be much less, according to the amount of business transacted in the office.‡

From that time until the passage of the act of the third of March, 1841, the laws providing for compensation of collectors remained without material change. Every such

---

* 3 Stat. at Large, 693.    † Hoyt v. United States, 10 Howard, 135.

‡ United States v. Macdonald, 2 Clifford, 281.

officer is required by the fifth section of that act to include in his quarter-yearly account, among other things, all sums received by him for rent and storage of goods, wares, and merchandise stored in the public storehouses for which a rent is collected beyond what is paid for the same by such officer. Moneys received from that source, it is contended, may be retained by a collector of a non-enumerated port sufficient to make his annual compensation six thousand dollars, the claim being that the maximum limit prescribed to the non-enumerated ports is repealed by the subsequent legislation, but this court held otherwise and decided that the collector under that act could in no case retain more than two thousand dollars, and that he was bound to pay the excess beyond that amount, into the treasury as part and parcel of the public money.*

Consequently the conclusion was that the compensation of a collector of one of the *enumerated* ports may be six thousand dollars, but the compensation allowed to the collector of one of the non-enumerated ports cannot exceed five thousand dollars, according to the amount of fees and commissions collected and the amount received from rent and storage. Officers of the kind may receive the maximum rate of their office allowed by the prior law from the sources of emolument recognized and prescribed by that act, provided the office, after deducting the necessary expenses incident to the same, yields that amount from those sources; and in addition thereto he is entitled to whatever sum or sums he may receive from rent and storage, provided the amount does not exceed two thousand dollars, but the excess beyond that sum and the excess, if any, beyond the maximum rate of his office as fixed under the prior law, he is required to pay into the treasury as part and parcel of the public money.†

Attempt was subsequently made by the United States to limit the operations of the Storage Act, as a source of compensation to collectors, to such storage *only* as is received

---

* United States *v.* Walker, 22 Howard, 313.            † Ib.

for stores *leased* by the Treasury Department, for which rents are paid by the importers of goods beyond the rent paid on behalf of the United States, but the court refused to adopt that narrow construction, and held that all sums received for storage, whether the goods imported were deposited in the public stores or the "other stores" named in the acts of Congress, are required to be included in the quarter-yearly account of the collector, which he is directed to. render to the Secretary of the Treasury, and that the yearly aggregate of such sums constitute the basis of computation in ascertaining what amount, if anything, the collector is entitled to receive as compensation from that source of emolument, and what amount, if anything, he is required to pay over from that source, as excess beyond the two thousand dollars, into the public treasury.*

None of these propositions are controverted by the defendant, nor does he contend that any of those provisions have been superseded by any express repeal, but he insists that surveyors performing the duties of collectors, under the fifth section of the act of the second of March, 1831, are entitled to the same compensation as the collectors of the *enumerated* ports.

Merchandise imported from a foreign port and consigned to merchants at St. Louis was required, if the importation was subject to custom duties, to be entered at the custom-house in New Orleans in the same manner as required in case of the entry of goods imported for consumption, and the officers of the customs at that port are required to proceed to assess the custom duties in the same way as if the merchandise had been destined for sale or consumption in that market.

Payment of the duties, however, is not required to be made at that port, but the importer is required to give a bond, called a transportation bond, conditioned that the packages described in the invoice shall, within a specified

---

* United States *v.* Macdonald, 5 Wallace, 656; Same case, 2 Clifford, 283; Clark *v.* Peasely, Circuit Court, Massachusetts District, October Term, 1862.

time, be delivered to the surveyor and acting collector of the port of St. Louis. Due notice of the proceedings is then given by the collector of the port where the duties were ascertained and assessed to the acting collector of the port to which the merchandise is destined. Such proceedings being had, the vessel may proceed on her voyage, and when she arrives at the port of destination the packages are placed in the custody of the acting collector of that port, who receives the duties, giving notice of that fact to the collector of the port where they were ascertained and assessed, and the collector of the latter port is authorized to cancel the transportation bond given by the importer.*

Compensation was claimed by the defendant at the rate of six thousand dollars per annum, and it is admitted that he retained that amount of the moneys collected by him in pursuance of that claim, two thousand dollars of which accrued from rent and storage, and the other four thousand dollars accrued from fees, commissions, and allowances recognized and prescribed by the prior Compensation Act.†

Four thousand dollars may be received as compensation under that act by the collector of each of the seven ports named in the ninth section of that act, and the provisions of a more recent act give the same compensation to the collector of the port of Portland, Maine, but the tenth section of the said Compensation Act provides that whenever the emoluments of any other collector of the customs shall exceed three thousand dollars, after deducting therefrom the necessary expenses incident to his office, in the same year, the excess shall in every such case be paid into the treasury for the use of the United States.‡

St. Louis is not one of the enumerated ports, but the defendant insists that the act of the second of March, 1831, which devolved upon the surveyor of that port the duties of collector, designated a third class of ports, and that the

---

* 4 Stat. at Large, 482; Belcher *v.* Linn, 24 Howard, 516.
† 3 Stat. at Large, 895.          ‡ 3 Id. 695; 13 Id. 46.

maximum compensation of such a collector is six thousand dollars. Nothing is contained in the act to support any such theory or to afford the slightest evidence that Congress intended anything of the kind. Instead of that the act provides that the surveyor charged with such duties shall receive, in addition to his customary fees, an annual salary of three hundred and fifty dollars, which is utterly inconsistent with the theory that he is entitled by virtue of that act to the same compensation as the collector of one of the enumerated ports.

Confirmation of that view is also derived from the further provision of the same section, that no salary arising under the act shall commence until the act shall take effect and merchandise shall be imported under its authority. Prior to that time the customary fees of the surveyor of that port accruing under the Compensation Act of the seventh of May, 1822, could not exceed two thousand dollars, and it is not pretended that he could retain to his own use more than two thousand dollars from rent and storage.

Apply those suggestions to the case before the court and it is clear that the compensation of the defendant, if regarded merely as a surveyor, could not exceed four thousand three hundred and fifty dollars, even if it be admitted that the sum called salary is an addition to the four thousand dollars to be derived from the other sources of emolument and not merely an addition to the basis of calculation in computing the maximum to be derived from fees, commissions, and allowances, as provided in the tenth section of the Compensation Act.

Small sums called salary have always been allowed to collectors and to the surveyors of certain ports, but such allowances have uniformly been included in the basis of calculation as part of the receipts from fees, commissions, and allowances in computing the maximum compensation of the officers interested. Surveyors of ports, where the officer is charged with the duties of collectors, now stand upon a different footing, as the act of the third of March, 1857, provides that such surveyors shall be entitled to the

same compensation as is allowed to collectors for like services, in the settlement of their accounts.*

Grant that and still it is contended by the defendant that the maximum compensation of all collectors, except those of the enumerated ports, as provided in the tenth section of the Compensation Act, is repealed by the act requiring collectors to include all sums received for rent and storage in their quarter-yearly accounts. Much discussion of that topic, however, is unnecessary, as the question has been twice determined adversely to the defendant by the unanimous decisions of this court.†

Such a collector cannot receive, under any circumstances, more than five thousand dollars, not even if the office earns a greater amount, and he may be obliged to accept much less in case the office does not earn three thousand dollars net from fees, commissions, and allowances, or in case the amount received from rent and storage falls short of two thousand dollars.

Effort is also made in argument to derive support to the proposition that the limitation contained in the tenth section of the Compensation Act is repealed, from the act which provides that the compensation of such a surveyor shall be the same as is allowed to collectors for like services, but it will be sufficient to say in response to that suggestion that the court is of the opinion that the proposition is destitute of any foundation whatever.

Suppose that is so, still it is insisted by the defendant that the act of the eighth of June, 1872, entitles him, as the administrator of the intestate, to retain to the use of the estate of the decedent a rate of compensation equal to six thousand dollars per annum, but the court is entirely of a different opinion.‡

Stripped of certain redundant words, the body of the act is exactly the same as section eighth in the prior act.§ Both

---

* 11 Stat. at Large, 221.

† United States *v.* Walker, 22 Howard, 314; United States *v.* Macdonald, 5 Wallace, 655.

‡ 17 Stat. at Large, 336.                    § 11 Id. 229.

acts provide that such a surveyor " shall be entitled to the same compensation as is allowed to collectors for like services," and neither contains a word which is repugnant to the tenth section of the Compensation Act.*

Nor is the proviso in the latter act inconsistent with the prior limitation, as the maximum allowance to such a collector is three thousand dollars from fees and commissions and two thousand dollars from rent and storage.

JUDGMENT AFFIRMED.