## Case No. 2,387.

CANON CITY & S. J. RY. CO. v. DENVER & R. G. RY. CO.

DENVER & R. G. RY. CO. v. ALLING et al.

[Trans. Rec. U. S. Sup. Ct. Oct. Term, 1878, p. 9884.]

Circuit Court, D. Colorado. June 1, 1878.[1]

RAILROADS — RIGHT OF WAY OVER PUBLIC LANDS — THE 'GRAND CANON — APPROPRIATION — CONFLICTING RIGHTS—PRINCIPAL OFFICE.

[1. The certificate of incorporation filed by the Denver and Rio Grande Railway Company, under Rev. St. Colo. c. 18, defining its line in part as continuing from a point at or near Canon City "up the valley of the Arkansas through the Big canon of the same to a point at or near the mouth of the South Arkansas river," was not such an appropriation of the right of way through the Grand canon as was contemplated by the act of June 8, 1872 (17 Stat. 339), recognizing the incorporation of that company under the Territorial Laws of Colorado, and granting and confirming to it a right of way.]

[See note at end of case.]

[2. The surveying and staking of the proposed line of road by such railway company did not amount to an occupation and appropriation of the right of way granted to that company by the act of 1872.]

[See note at end of case.]

[3. Nor was the building of the road from Pueblo to Canon City such an occupation and appropriation,—as it appeared that the company had halted at the latter place for three years. and had constructed another line of road on a route inconsistent with an intention to extend its line beyond Canon City.]

[See note at end of case.]

[4. A certificate of incorporation of a railway company, designating its "principal place of business," and setting forth that its principal business would be carried on in certain counties named, in which its line was to be located, is a substantial compliance with Act Colo. 1876, (11th Sess. 41), requiring such a certificate to designate the "principal office," and name of the county, in which the principal business of the corporation is to be carried on.]

[See note at end of case.]

[5. The Canon City and S. J. Ry. Company alleged that it had surveyed its line of road. and on a hearing as to the propriety of injunctions previously granted restraining that company and the Denver Company from interference with each other in the construction of their respective roads supported such allegation by exhibiting a copy of the profile of the line through the Grand canon apparently approved by the secretary of the interior. *Held*, that the court would regard the survey and location as having been made in accordance with the act of March 3, 1875 (18 Stat. 482), granting a right of way to any duly-organized railroad company which shall have filed proofs of its organization with the secretary of the interior, and requiring such a company, within 12 months after the location or survey of 20 miles of its road, to file a profile of its road with the register of the land office for approval by the secretary of the interior; and that, therefore, the right to occupy and use the canon for railroad purposes vested in the Canon City Company as against the Denver and Rio Grande Company.]

[6. Under Act Cong. March 3, 1875, providing for the use of any canon, pass or defile by more than one railroad company, two roads, granted a right of way through a canon, have the right to construct their lines if it is physically possible, irrespective of the width of way granted.]

[On April 20, 1878, the Canon City & San Juan Railway Company filed its complaint against the Denver & Rio Grande Railroad Company to enjoin interference with the construction of the line of the former company through the Grand canon. The complaint was filed in the third judicial district of Colorado, and an injunction was granted therein, and on the 22d of April, 1878, the suit was removed to the circuit court.

[The Denver Company filed its complaint against Alling, Locke, and Magrue, incorporators of the Canon City Company, and against the Atchison, Topeka & Santa Fe Railway Company, on the 27th of April, 1878, to enjoin the defendant the Canon City Company from occupying or attempting to occupy the Grand canon, and a temporary injunction was granted.

[On June 22, 1877, the secretary of the interior declared in an official communication his approval of the proofs of organization of the Canon City Company, and of a map showing the line of its road for a distance of 20 miles.[2]

[The portions of the act of March 3, 1875, referred to herein granted a "right of way through the public lands of the United States" to any railroad "company duly organized under the laws of any state or territory, * * * which shall have filed with the secretary of the interior, a copy of its articles of incorporation, and due proofs of its organization under the same, to the extent of one hundred feet on each side of the central line of said road." The 2d section provides: "That any railroad company whose right of way or whose track or road-bed upon such right of way passes through any canon, pass or defile shall not prevent any other railroad company from the use and occupancy of said canon, pass or defile, for the purposes of its road, in common with the road first located, or the crossing of other railroads at grade. * * *" Section 4 declares that any railroad company desiring to secure the benefits of that act shall, "within twelve months after the location of any section of twenty miles of its road, if the same be upon surveyed lands. and if upon unsurveyed lands, within twelve months after the survey thereof by the United States, file with the register of the land office for the district where such land is located, a profile of its road; and upon the approval thereof by the secretary of the interior, the same shall be noted upon the plats in said office, and thereafter all such lands over which such right of way passes should be disposed of subject to such right of way."][2]

Before DILLON, Circuit Judge, and HALLETT, District Judge.

---

[1] [Reversed in Denver & R. G. Ry. Co. v. Alling, 99 U. S. 463.]

[2] [From statement by Mr. Justice Harlan, in Denver & R. G. Ry. Co. v. Alling, 99 U. S. 463.]

HALLETT, District Judge. Two companies claim the same right of way for a railroad through the Grand canon of the Arkansas river where there is room for only one road. That remarkable defile is in the public domain, and each company claims under an act of congress. The interpretation and application of these acts present a question under the laws of the United States which may properly be considered in this court pursuant to the provisions of the act of 1875 (18 Stat. 470). The jurisdiction in equity to determine the right and restrain any disturbance of it is not doubted since there is no adequate remedy at law. The first of these suits was brought in the district court of Fremont county, and an injunction was there allowed restraining the defendant company from prosecuting work in the canon. After some days that suit was removed into this court on petition of the defendant therein under the authority of the act of 1875, and the defendant in that suit brought a new suit in this court against the corporators of the first named company and some others to enjoin them from disturbing its right to occupy the canon. The reason for bringing this last suit against the corporators of the San Juan Company and not against the company itself is an irregularity in the organization of the latter company on which the plaintiff relies to impeach its validity. Argument was heard in the last mentioned suit on a motion for injunction, and perceiving that the same matters were involved in both suits and that the right was somewhat doubtful, it was thought best to continue the injunction in the first suit and allow a like writ in the second; in effect to place both parties under restraint until mature consideration of the questions presented could be had. The bill in the first suit was something lame and impotent, and the plaintiff therein was allowed to file an amended bill upon which a writ was issued of the same scope and effect as that allowed in the second suit. As the controversy stands both parties are enjoined from prosecuting the work of a great public improvement where one must be entitled to go on, and therefore the court should not halt between opinions.

Both cases will be taken into view in this discussion and the allegations in each bill, so far as they are not in conflict, will be taken as true. It is believed that enough is admitted in the records of the two cases to determine the right to a preliminary injunction. The Denver and Rio Grande Railway Company, defendant in the first suit and plaintiff in the second, has the senior claim, and in ascertaining its right we shall reach the principal question in the case. That corporation was organized in the year 1870, under chapter 18 of the Revised Statutes of the territory (Rev. St. p. 115). The object of the corporation, as expressed in the certificate, was to construct a number of railway and telegraph lines, or perhaps it would be more correct to say a trunk line with numerous branches. The principal line was to be extended from Denver through Colorado and New Mexico to El Paso in the state of Chihuahua. and there were to be seven branches, one of them extending to Salt Lake City in Utah, and the others to various points in Colorado and New Mexico. These lines were defined generally in the certificate as extending from place to place, or lying in the valley of some stream or through some canon or pass in the mountains, but no attempt was made to give courses and distances, or to specify in any other way the exact location of the routes selected. Indeed it seems that the various lines had not been fixed except as to the general direction, and no survey had been made by which they could be definitely located. Referring to the principal line which was more particularly defined than any of the branches, the part which includes the disputed territory is as follows: "Commencing at Denver, Colorado Territory, thence running up the valley of the South Platte river, on the southeast side thereof to a point at or near the mouth of Plum creek; thence up the valley of Plum creek to a point at or near the forks of East Plum creek and West Plum creek; thence up the main east branch of Plum creek valley to the lake in township eleven (11), range sixty-seven (67) west, on the crest of the ridge dividing the waters of Plum creek and Monument creek; thence down the valley of the Monument creek to a point at or near the junction of the valleys of the Monument and Fountain qui Bouille, or to a point in the Fountain valley below the mouth of the Monument, if the detailed survey shall determine the latter to be the most eligible; thence by the valley of the Fountain or across its west tributaries to such a point on the Arkansas river, at or above Pueblo, as may be found upon a detailed survey to be the most eligible for intersecting the same; thence up the valley of the Arkansas river to a point at or near Canon City; thence continuing up the valley of the Arkansas through the Big canon of the same to a point at or near the mouth of the South Arkansas river; thence by the valleys or the adjoining slopes of the South Arkansas river and of the Poncho creek, to the summit of the divide between the waters of the Arkansas and the San Luis park (known as Poncho Pass); thence by the most eligible route in a general southerly direction down the San Luis valley to the valley of the Rio Grande del Norte."

Everyone who is at all acquainted with the geography of the country, will know that the line between the mouth of Monument creek and Canon City, as thus described, embraces a strip of country more than forty miles wide, in which the road might have been located. If it was more restricted in the mountain region beyond Canon City, it was because the valley of the Arkansas was narrower there, and not from any effort of the corporation to

describe the line with accuracy. Further on in the San Luis valley, which is many miles wide, it takes the whole valley for its location, and so also down the Rio Grande river through New Mexico. It is to be observed, however, that the act under which the corporation was organized did not require any description of the lines of road to be constructed, or even that the termini of the roads should be stated. But it did require a statement of the objects of the company, and in the case of a railroad perhaps that would be most conveniently done by giving some general description of the road. That was a general act providing for many different corporations, which was probably intended to comply with the direction of congress in 1867, that territorial assemblies should not grant private charters, but could, by general acts, permit the incorporation of persons for mining, manufacturing and other industrial pursuits. 14 Stat. 426. It contained general provisions applicable to all corporations which should be organized under it, and special provisions which were applicable to some; only railroad companies were not of this latter class, but were left to the general provisions of the act, which required no designation of the route or termini of the road further than would be necessary in stating the objects of the company..

Without other authority than was given by this general act of the territory, the company built its road to Pueblo. On the 8th day of June, 1872, congress passed an act granting to the company right of way over the public lands, and confirming the powers given to the company by the territorial law. The act requiring the company to build its main line as far south as Santa Fé, within five years, which period is by a later act extended to ten years. 19 Stat. 405. The material part of the act for present consideration is as follows: "That the right of way over the public domain, one hundred feet in width on each side of the track, together with such public lands adjacent thereto as may be needed for depots, shops, and other buildings for railroad purposes, and for yard room and side tracks, not exceeding twenty acres at any one station, and not more than one station in every ten miles; and the right to take from the public lands adjacent thereto, stone, timber, earth, water, and other material required for the construction and repair of its railway and telegraph line, be, and the same are hereby granted and confirmed unto the Denver and Rio Grande Railway Company, a corporation created under the incorporation laws of the territory of Colorado, its successors and assigns." 17 Stat. 339.

On behalf of the Rio Grande Company it is contended that this act conferred an exclusive right to occupy the Grand canon of the Arkansas river for railroad purposes; that the certificate of organization is a public record of which congress had notice at the time of passing the act, and as the canon is

mentioned in the certificate as a point on the line of the road, the company was authorized and required to build in that place. And certainly it will be conceded that congress was advised of everything that the law required to be stated, and that was in fact stated in the certificate of incorporation. That certificate was evidence of the corporate existence under the territorial law, and congress, in recognizing the company and confirming to it the powers given by the law of the territory, must have acted with reference to it. And so if the act had required the corporators to describe the various lines of road which the company proposed to build, and they had so described them with particularity in the certificate, the effect of the act of congress would not be doubtful. In that case the act of congress would operate as a present grant of the particular way or ways described in the certificate. But the certificate does not in fact locate the different lines of road with such particularity as is required in granting a right of way. Said the supreme court of Massachusetts: "A way ex vi termini imparts a right of passing in a particular line." Jones v. Percival, 5 Pick. 485. And if the line is not described with reasonable certainty it cannot be said that the grant is of a particular way by description. No one will contend that a grant of right of way to a railroad company, either by the government or an individual, must specify the exact line of the road, but at least the track to be traversed by the road must be designated. The description must come within something less than forty miles of the line of location. In this certificate there is nothing like a description of any particular line. The mention of points and places on the various lines was but an indication of the general course and direction of those lines and the statement that the line should be in a certain valley was not more definite. Like the mouth of Monument creek, the Arkansas river, Canon City, and other points on the line, the object of naming the Big canon of the Arkansas river was apparently to give the general course of the road. Certainly it cannot be said that naming these points and places is a sufficient description to charge the public lands along the line with an easement of which purchasers would have notice. If it is claimed that we should separate the big canon from the remainder of the line and accept that portion as sufficiently described because its mighty walls enclose a narrow space, the proposition cannot be entertained. The grant is an entirety as to all public lands lying in the course of the several lines of road, and it would be absurd to say that it was intended to pass this canon by description and nothing more. Congress had already learned the strategical value of passes and defiles in the mountains, and when it was intended to grant such places by description the right of other companies to oc-

cupy the same ground was reserved. 17 Stat. 202.

We may say, that this was no grant of a particular way over the public domain, and we have yet to consider its effect as a general authority to appropriate the public lands to the uses of the company. That it is in terms such a grant no one can deny and we should hesitate to say that it may be void for uncertainty. We may concede the power of congress to charge all the government lands in perpetuity with a floating easement which may be asserted at any time against innocent purchasers who have bought of the public lands in good faith, but we should be slow to believe that such was the intention unless it is plainly declared. If by the act of 1872 the company acquired a present right to appropriate for right of way and stations any lands that were then public lying in the general course of any of its lines farms, villages and towns that have been taken up since that time must yield to such right. It is not to be presumed, however, in the absence of express declaration that such a result was intended by congress. "If A seized of a great waste, grants the moiety of a yard land lying in the waste without ascertaining what part, or the special name of the land, or how bounded, this may be reduced to a certainty by the election of the grantee. But it is otherwise in the case of the king's grant for there can be no election in that case and therefore the grant is void for uncertainty." Bac. Abr. tit. "Grant," H. 3. And so we may say in accordance with the principle that a grant to a corporation shall be strictly construed in favor of the public and against the corporation, that the act of 1872 gave nothing except upon the location and construction of the road. In the general act of 1875 (18 Stat. 482), and in most special acts granting right of way over public lands (16 Stat. 395; 17 Stat. 202, 212, 224, 340, 343, 393, 612; 18 Stat. 130, 274, 306, 309), provision is made for filing a plat of the route selected with the secretary of the interior, and the line of the road is then minuted on the plats of the public surveys in the local office. In this way full notice is given to purchasers and all who may be interested in the subject of the right claimed by the company. Any sale of the lands must be made subject to the easement, and hence the necessity for specifying the lands so to be affected. Under these acts it seems very clear that no right is secured by the company until the plat is filed with the secretary. In the act of 1872, and in some other acts (14 Stat. 211, 237, 240, 290, 294; 16 Stat. 192; 17 Stat. 280), no such provision is found, and the omission suggests that some other method of designating the lands appropriated by the company was intended. That method, in the absence of any other prescribed by law, can only be

the use and occupation of the lands for the purpose indicated in the act. As under acts of the first class the company will not acquire any interest in the public lands until the plat shall be filed, so under acts of the second class no interest is acquired until the lands are occupied by the company. Under all acts regulating the sale of public lands the grantee is required to designate the part which he will take in order that it may be segregated from the general mass; it is so under homestead and pre-emption laws and all other laws for disposing of public lands unless the acts of this class shall be regarded as an exception. Certainly there can be no hardship in requiring these companies in accepting the bounty of the government to conform to the general rule. Referring to a similar act the supreme court of California says: "It was doubtless the purpose of the act merely to give a right to enter on the public lands, assuming them to be vacant, and its effect is to relinquish to the plaintiff (the R. R. Co.) any claim for compensation that might belong to the United States, as proprietor under any proceeding under the state law to appropriate the land for public use." Northern R. Co. v. Gould, 21 Cal. 260. So here it may be said that the act of 1872 authorized the company to go upon such of the public lands as should be found vacant and unoccupied, and appropriate them to the uses of their roads. In this sense it was a grant in presenti, but not otherwise, and any rights in the public lands secured by others under existing laws before any occupation or appropriation by the company, must be respected by the latter. In Central Pac. R. Co. v. Dyer, Case No. 2,552, this conclusion was apparently rejected upon grounds which are not stated, but I have not been able to adopt the views of the distinguished judge who delivered the opinion in that case.

Having ascertained that no interest in the lands in controversy passed to the company under the act of 1872 until it should appropriate them to its own use, we have next to inquire whether there was in fact any such appropriation of the Grand canon before the rival company set up a claim to it. On this point the company avers: First. That in the years 1871-2 it surveyed and located its line through the canon, and set substantial stakes upon it. Second. That it did in the same years "in sundry places in and near said canon grade and excavate the bed and line of its said railway." Third. That about the year 1875 it completed its road from Pueblo to Canon City.

If any of these acts afford evidence of occupation and appropriation by the company such as the public were bound to respect, its right was thereby established. That the surveying and staking does not afford evidence of that character is clear enough on

reason and authority. Merritt v. Northern R. Co., 12 Barb. 606; Morris & Essex R. Co. v. Blair, 1 Stock [9 N. J. Eq.] 635. As I had occasion to say some years ago in another case which arose under a similar act of congress, the modern practice of surveying several routes in order to induce the people to give lands, bonds or other aid, or give the right of way on favorable terms, in consideration of the building of the road on one or the other of the lines so surveyed, must tend strongly to discredit any such evidence of location. Indeed railroad companies, in this country at all events, are constantly surveying new routes in an experimental way, and no one is disposed to accept anything less than the building of the road itself as evidence of a permanent location. As to the work alleged to have been done "in and near" the canon, it will be observed that the language of the bill is exceedingly vague. If a road-bed was constructed for any considerable distance, which would in itself afford evidence of the character of the improvement, that would be an act of appropriation which no one could deny. But to overturn a few shovelfuls of earth here and there would not leave any intelligible sign of the company's occupation. The charge in the bill is entirely consistent with very little work, and for the present purpose of determining the right to a preliminary injunction it must be regarded as insufficient. If at the hearing it can be shown that substantial work was done there another view may be taken of it. As to building the road from Pueblo to Canon City, if before any adverse occupation of the canon the company had shown a purpose to go on from the latter place, some weight might be given to it. With a line located and in process of construction from place to place no other company would be allowed to interfere, under an act even more vague and indefinite than that of 1872. But the company halted for three years at a town at the base of the mountains, which might be regarded as a permanent terminus. Meanwhile if reference may be had to a fact which is not in the pleadings, but may be taken as belonging to the history of the country, the company reached the San Luis valley by another line, and that is in the course of the line through the Grand canon towards El Paso. These circumstances do not show a purpose to prosecute the work beyond Canon City, but they tend in the opposite direction; and this must also be rejected as failing to show occupation and appropriation by the company.

At the time this controversy arose the land in and along the Grand canon was of the public domain and still subject to occupation and appropriation under the act of 1872, if it had not been previously appropriated by the rival company. That company is known in the pleadings as the Canon City and San Juan Railway Company, and its corporate character is denied upon the ground that its certificate of incorporation is defective. The act of 1876 (11 Sess. 41) provides among other things to be set out in a certificate of incorporation, "the name of the town or the place and the county in which the principal office of the company shall be kept and the name of the county in which the principal business of the company shall be carried on." A substantial compliance with this act was all that was required. Spring Valley Waterworks v. San Francisco, 22 Cal. 434. As to the first clause requiring the office of the company to be designated the corporators of the San Juan Company declared in their certificate "the principal place of business of said company shall be Canon City, in the said county of Fremont." In the case of a railroad company the "principal place of business" is obviously the "principal office." With manufacturing corporations this may not be true, but a railroad company having business all along its line has no principal place of business other than its general or principal office.

As to the second clause of the act above recited, which requires the county in which the principal business will be carried on to be stated, it was sufficiently observed by stating the counties in which the road was located. As before observed, the company will do business wherever the road may run, and its "principal business," if that can be separated from the general office, must be along the whole line of road. If this clause of the act has any application whatever to railroad companies it ought to be sufficient to state the counties through which the road will pass. It would seem idle to state separately after giving the location of the road in the certificate that the principal business of the company would be carried on in the counties of Fremont and Lake, where the road would be built. The certificate is regarded as complying substantially with the act and therefore sufficient.

The act of 1868, on the same subject (Rev. St. p. 118), under which the Rio Grande Company was organized, was quite different. It required "the name of the town and county in which the operations of the said company shall be carried on" to be given; and the corporators of that company designated the principal office, but did not attempt to locate the "operations" of the company in any town or county. If any defect arose out of that omission it was probably cured by the act of congress of 1872. In the bill filed by the Rio Grande Company it is alleged that the defendant never did in fact survey any line through the canon, and this, if true, may be of weight. The latter company, however, in its bill avers that the survey was duly made and the allegation is supported by a copy of the profile of the line which appears to be approved by the secretary of the interior. For the present we

must regard the survey and location of that line as having been made according to the act of 1875 (18 Stat. 482), and sufficient to vest in the company the right to occupy and use the canon for railroad purposes as against one claiming under the act of 1872.

That the Rio Grande Company may be admitted to the same right of way if there is room for two roads in the canon seems to be clear, and perhaps that company may be entitled to use the track of the San Juan Company if there is room for but one road. This last question may be passed for the present, and as to the first it is only necessary to say that both companies cannot go on with the work of construction at the same time in a narrow defile, such as the canon is said to be. To permit it would be to perpetuate the conflicts which we were lately asked to suppress. If the San Juan Company must admit its rival to its right of way or to its track, that can only be done after its road has been built. In building its road through the canon, however, due regard must be had to the rights of the other company, and the line must be so located as to admit of the construction of another road, if that be possible. Under the act of 1875 one company cannot appropriate all the available ground in a canon, pass or defile to the exclusion of another, if less than the whole will reasonably answer its purpose. To enforce this provision perhaps the court, upon proper demand therefor, should control the location and building of the first road to such extent as may be necessary to protect the rights of other companies who may wish to use the same canon. This question can be better considered at the term which is near at hand, and the parties may then be heard as to the proper course to be pursued. Until then the San Juan Company will be allowed to proceed with the work of grading the line only which will admit of change and correction without serious loss to the company. That is to say the company may proceed in its own way to grade the road, but we reserve the right to correct the location and grading upon complaint made to us by the Rio Grande Company, if we find that we have power to proceed in that manner.

DILLON, Circuit Judge. The Denver and Rio Grande Railway Company has the right to construct its railroad through the Big canon of the Arkansas under the act of congress, June 8, 1872 [17 Stat. 339]. The Canon City and San Juan Railway Company has the like right under the act of congress of March 3, 1875 [18 Stat. 482]. The first named company's rights as against the last named company, or any company duly organized, were not complete and exclusive as to any part of the canon until actual location and adoption of its line by corporate acts or action followed by actual use and appropriation. That this was done by the first named company prior to March 3, 1875, does not

appear with such certainty in the bill or pleadings, as to afford a basis for a judicial order in its behalf. Assuming, therefore, at this stage of the cause, that there was no consummated exclusive right in the Denver Company at the time when the Canon City Company was organized (Feb. 15th, 1877), we have the case of a concurrent right in the two rival companies to construct their roads through the canon and to use and occupy the canon for that purpose. The second section of the act of March 3, 1875, contains a special provision which in the supposed state of facts applies to these companies. It provides that "any railroad whose right of way or whose track or road bed upon such right of way, passes through any canon, pass, or defile, shall not prevent any other railroad company from the use and occupation of the said canon, pass, or defile, for the purposes of its road in common with the road first located, or the crossing of other railroads at grade." I concur in Judge HALLETT'S opinion that the pleadings as they stand do not show a state of facts which give the Denver Company an exclusive right to the use of the canon. What the proofs may hereafter show cannot of course be anticipated.

The canon is alleged to be only forty-five feet in width at the narrowest portion. It is alleged by the Denver Company that not more than one railway with way of the width in the act of congress granted (100 feet in width on each side of the track) can be constructed through said canon. But it does not appear that it is physically impossible to construct two lines of railway through the canon. The intent of congress is plain that canons and defiles in the public domain shall not be monopolized by one company. If there is room for two lines in this canon, each company, so far as now appears, has the right to use and occupy the canon for the construction of its road. Usually thirty feet in width, and even less, is ample space for two parallel lines of railway track. If each company desires to construct its line through the canon each should be permitted to do so, if it is practicable. If a center line be drawn through the canon, one company should be restricted to the space on one side of that line and the other to the space on the other side of that line, if this will allow of the construction of the two lines of railway in the canon, and no other course is more equitable. If it is uncertain whether the course above suggested is practicable, i. e. whether there is space for the two lines of railway in the canon, a commission of one or more disinterested engineers can be hereafter sent by the court to report the facts to the court for its information. If only one road can be constructed there, on the pleadings and the present status of the case, I think the Denver Company is not entitled to an injunction against the Canon City Company. If both companies

are ready to go forward to construct their roads immediately, one company should not be permitted to adopt a route which will prevent the other company from an equal, fair and reasonable use of the canon. "Equality is equity." Such are my general views as to the law of the case as it is now presented.

The precise order that ought to be made at this time is somewhat uncertain, by reason of an allegation by way of an amendment to the bill of the San Juan Company, which the demurrer admits. That amendment is as follows: "Plaintiff further avers that by reason of the narrow and crooked course of said canon through the close or narrow part thereof, not more than one railway can be constructed through the said narrow part, except by laying the track of one of said railways across the track of the other in many places, nor without great and constant hazard of collisions between the trains operated on said two railways." It may be taken sufficiently to appear as the case stands, that both companies cannot go on with the work of construction at the same time. It does not to my mind satisfactorily appear that there may not be room for two lines in all parts of the canon. The San Juan Company as above held on the pleadings, as they now stand, has the prior right of occupation, and it may, if it chooses, go on with the work of grading and construction between this and the term (which occurs in a little more than a month), meanwhile to lay no iron until further orders, and meanwhile the Denver Company to be enjoined. The Denver Company can then show that the San Juan Company are proceeding improperly with a view unfairly to monopolize the entire route and to exclude it if such is the fact. We can then adopt such course and make such orders as may appear to be right and just to each of the companies. Knowing our general views of their respective rights under the two acts of congress, it may not be too much to hope that they may adjust the controversy by agreement. I recommend a temporary order in conformity with these views if Judge HALLETT concurs.

[NOTE. In the action instituted by the Canon City Company the Denver Company filed a cross bill setting up substantially the same facts as in its original bill against Alling and others, and upon the final hearing two decrees were made, August 24, 1878,—one, in the suit of the Canon City Company, recognizing its prior right to proceed in the construction and operation of its road through the Grand canon without interference or obstruction by the Denver Company, with the right to the latter to thereafter exhibit its bill to compel the Canon City Company to so change, locate, and construct its road as to permit the convenient and proper location by the Denver Company of its own road, or to compel the Canon City Company to permit the Denver Company to occupy the track and roadway of the former company if at any point in the canon it should be impracticable to conveniently lay down or safely operate two distinct lines of railway; the other dissolving the preliminary injunction theretofore granted in the suit of the Denver City Company, and dismissing its bill.

[From both of these decrees the Denver City Company appealed to the supreme court, which reversed the same, holding that by the act of June 8, 1872 (17 Stat. 339), the Denver and Rio Grande Railway Company was granted a present beneficial easement over the route designated, which, upon actual location and appropriation, made a perfect title, and by relation took effect as of the date of the grant; and that the surveys of such company, followed by an occupancy of the canon in April, 1878, in advance of the Canon City and San Juan Railway Company, for the purpose of constructing the road, was a final appropriation of the way granted; but that the Denver Company, by its acceptance of the benefits of the act of March 3, 1877, extending the time for completing its road, must be held to have assented to the provisions of the act of March 3, 1875 (18 Stat. 482), that any other railroad company duly organized under the laws of any state or territory might use and occupy the canon for the purposes of its road in common with the road first located; and that in this case, where it was found impossible in any portion of the canon to lay more than one road-bed and track, the Canon City Company should have the right to use such road-bed and track in common with the Denver Company after its completion. Denver & R. G. Ry. Co. v. Alling. 99 U. S. 463.]